**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LOWELL P. POULSON** ,                          **CASE NO. 2:11-cv-1067**

           **Petitioner,**                      **JUDGE ALGENON L. MARBLEY**

**v.**                                           **Magistrate Judge Kemp**

**WARDEN, ROSS CORRECTIONAL
INSTITUTION**.

          **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  This matter is before the Court on that petition,

respondent's return of writ, the exhibits attached to the return, and petitioner's traverse.

 For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's

claims be **DISMISSED**.

## I.  PROCEDURAL HISTORY

On September 28, 2009, a Franklin County, Ohio grand jury indicted petitioner

on fourteen felony counts: four kidnaping counts, three aggravated robbery counts, six

robbery counts, and one count of having a weapon while under a disability.  The

offenses allegedly occurred on December 10, 2008, and involved the robbery of a

Donato's Pizza restaurant.   *Return of Writ,* Exhibit One.

Petitioner pleaded not guilty and was tried by a jury.  On June 24, 2009, the jury

convicted him of one count of aggravated robbery (with a firearm specification) and the

trial judge found him guilty of the weapons offense.  In a judgment entry filed on July

29, 2009,  the trial judge sentenced petitioner to nine years in prison on the robbery

count, an additional three years for the firearm specification, and two years on the

weapons count, for a total of fourteen years of imprisonment.  *Return of Writ*, Exhibit

Three.

 Petitioner timely appealed his conviction to the Court of Appeals for the Tenth

Appellate District.  He raised two assignment of error, as follows:

 **STATEMENT OF ASSIGNMENTS OF ERROR**

 **ASSIGNMENT OF ERROR ONE**

 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND
 DEPRIVED DEFENDANT-APPELLANT OF DUE PROCESS OF LAW BY
 ENTERING A JUDGMENT OF CONVICTION AGAINST THE
 MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 (Record reference: Appendix, Judgment Entry)

 **ASSIGNMENT OF ERROR TWO**

 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED
 PREJUDICIAL ERROR BY ADMITTING EVIDENCE OF AN
 UNRELIABLE IDENTIFICATION BASED UPON AN UNNECESSARILY
 SUGGESTIVE METHOD OF PRESENTING A PHOTO ARRAY.  (Record
 reference: Transcript Vol. I, pp. 89-90).
    .

*Return of Writ*, Exhibit Five.  In a decision dated August 3, 2010, the Tenth District Court

of Appeals overruled his two assignments of error and affirmed petitioner's conviction.

*State v. Poulson*, 2010 WL 3011081 (Franklin Co. App. Aug. 3, 2010); *Return of Writ,*

Exhibit Seven.  Petitioner timely sought review by the Ohio Supreme Court, but that

court dismissed his appeal as not involving any substantial constitutional question.

*State v. Poulson*, 127 Ohio St.3d 1463 (Dec. 15, 2010); *Return of Writ,* Exhibit Eleven.

On December 2, 2011, petitioner timely filed his petition for a writ of habeas corpus in this Court.  In his petition, he raised the following grounds for relief, stated here exactly as they appear in the petition:

> **Ground One:** The trial court committed reversible error and deprived defendant/appellant of the due process of law by entering a judgment of conviction against the manifest weight of the evidence and contrary to law.

> **Ground Two:** The trial court abused it (sic) discretion and committed prejudicial error by admitting evidence of an unreliable identification based upon an unnecessarily suggestive method of presenting photo array.

It is respondent's position that the first claim was procedurally defaulted, and that both claims lack merit.

## II.  FACTS

The facts of the underlying offense are stated in the state court of appeals' opinion.  Although, as will be discussed later, petitioner disagrees with that statement of facts and contends that this Court is not bound to accept the statement as accurate, the Court will set forth the facts as the state appellate court found them.  Whether there is some inaccuracy in its recital of the facts that may be material to either or both of petitioner's claims is a question which will be reserved for further discussion if necessary.

This is how the state court of appeals described what happened on December 10,

2008, which led to the filing of charges against petitioner:

On the evening of December 10, 2008, Mark Kipple ("Kipple"), was on his way out of a Donatos Pizza, located at 2922 Noe-Bixby Road, in the city of Columbus, to deliver pizzas when he encountered two men. Kipple later testified that one of the men had a gun, and it was this man that pushed him and Mary Call ("Call"), also a Donatos' employee, into the back room and searched him. This man was later identified as appellant.

{¶ 4} During his testimony, Kipple described the man who forced him into the back room as a tall, older white gentleman with a blue bandanna and a scruffy beard, but later described him as "the whiter gentleman." (Tr. 43.) Kipple testified that the man had a gun pointed at him and he "felt threatened." (Tr. 39.) The second man, Kipple testified, was a "colored gentleman" around the age of 59. (Tr. 40.)

{¶ 5} Call testified that two men came in with guns and someone said "this is a robbery, no joking." (Tr. 58.) Then she was pushed into the back room and searched by a man wearing a blue and white mask, whose skin was "not white." (Tr. 60.) When asked, Call could not swear that his skin was real dark, just that "it was not white like my skin." (Tr. 60.)

{¶ 6} Michael Dean Harrison ("Harrison"), another employee of Donatos, was also ordered to the back room by a man with a gun, but Harrison walked into the back room and exited the building out of a back door, ran to a nearby home and called 911 to report the robbery. The 911 call was received at 8:25 p.m. Harrison testified that, after making the call, he walked back to the store and saw two men carrying a pizza bag run out of Donatos, get into a white pickup truck, and head north on Noe-Bixby Road without turning on the headlights. He testified that he was scared and that he would not be able to make an identification since he did not get a good look at either of the men.

{¶ 7} Donatos' employee Courtney Gomez ("Gomez"), was not initially taken into the back room with the others but was first asked to get the money out of the registers. She testified that both men had guns, and that, while both men appeared to be black males, the man who went into the back room with the other employees had lighter skin than the man who stayed up front with her.

4

{¶ 8}Keri Richardson ("Richardson"), another employee of Donatos, testified that she was taken into the back room with a gun to her head where she, Kipple, and Call were all searched. She further testified that the two men were masked, but she got a good look at the suspect who took her into the back room. Richardson testified that, while Kipple and Call had their heads down, she looked him straight in the eyes. Richardson testified that she was able to see the area under his eyes and above his eyebrows and that "he was light-skinned, at least mixed * * * like light black" with a little bit of gray in his eyebrows. (Tr. 113.) Richardson also testified that the man was pointing a gun at her and said "I'm not gonna shoot you," to which she replied, "You need to quit pointing the gun at us." (Tr. 99.)

*State v. Poulson, supra,* at *1-2. The state court then recited in detail the circumstances leading up to petitioner's identification and arrest. Because his second ground for relief deals with the circumstances of his identification by Keri Richardson, the Court defers further discussion of that issue here. It suffices to say, to round out the factual events leading to petitioner's being indicted, that Ms. Richardson did identify him from a photo array; that his truck was stopped by police shortly after the robbery; that police officers saw two men inside the truck who matched the description of the robbers, but before they could arrest them, the truck sped away (but not until after the officers broke the window on the driver's side); that when the truck was recovered, it had a broken window as well as pizza sauce, cheese and toppings inside; and that a toboggan mask, work gloves bearing petitioner's DNA, and tools were also found in the truck. Petitioner also had window glass in his pocket when he was brought in for questioning. For his part, petitioner produced an alibi witness who said that petitioner was at his home during the time of the robbery.

5

### III.  PROCEDURAL DEFAULT

Respondent concedes that petitioner's second ground for relief was properly presented to the state courts.  However, respondent argues that ground one, to the extent that it is a manifest weight of the evidence claim, is not cognizable in federal habeas corpus because that claim arises solely under Ohio law, and that to the extent petitioner intended to challenge the sufficiency of the evidence supporting his conviction as a violation of the Due Process Clause of the United States Constitution, he cannot do so because he never made that argument to the state courts.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

6

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

The parties disagree about only one aspect of procedural default: whether petitioner's first assignment of error in state court, which is in all respects identical to his first ground for relief in his habeas corpus petition, encompassed a claim that the evidence was constitutionally insufficient to support his conviction.  The state court of appeals appears to have discussed the issue solely in terms of Ohio law, but that is not dispositive; the question is whether, in his appellate briefing, petitioner fairly alerted

the state court that he was challenging the sufficiency of the evidence underlying his

conviction.  *See generally Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987) (state court's

failure to discuss a claim which had been properly presented "did not undermine the

exhausted nature of the claim").

Although the language used in petitioner's first assignment of error suggests that

he was raising only a manifest weight of the evidence challenge, he began the argument

section of his appellate brief in this way:

> The Defendant was convicted of Aggravated Robbery with a gun and
> Weapon Under Disability.  He was sentenced to 14 years in prison.  In
> order to convict the Defendant of those crimes, the burden is upon the
> prosecution to establish every element of an offense beyond a reasonable
> doubt.  *In re Winship* (1970), 397 U.S. 358.  The presumption of innocence
> of the defendant must be maintained until overthrown by proof that
> excludes every reasonable doubt of guilt.

*Brief of Defendant-Appellant*, *Return of Writ*, Exhibit Five, at 9.  After a brief citation to

cases which permit Ohio courts to order a new trial on the ground that a conviction is

against the manifest weight of the evidence even if there is sufficient evidence to

support the conviction, petitioner argued: "In the case at hand, the evidence did not

prove beyond a reasonable doubt that the Defendant Lowell Poulson was the individual

who entered a Donatos Pizza shop with a second individual on December 10, 2008,

brandished a gun, and left with money."  *Id.* at 10.

*In re Winship* is not a case which deals with convictions being against the

manifest weight of the evidence.  Rather, it dealt with the quantum of proof needed in a

juvenile adjudicatory proceeding.  In holding that there was no difference in the amount of proof required in either an adult criminal case or a juvenile case where a minor is found to have violated the criminal law, the Supreme Court made this statement: "Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. at 364.  In *Jackson v. Virginia*, 443 U.S. 307 (1979), the case in which the Supreme Court set out the standard to be used when a habeas corpus petition challenged the sufficiency of the evidence underlying a state court conviction, the Court explicitly adopted *Winship's* formulation of the standard, stating that "[a]fter *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 318.

By citing to *In re Winship* and explicitly arguing that the prosecution did not establish every element of petitioner's guilt beyond a reasonable doubt, petitioner clearly invoked his constitutional right not to be convicted in violation of the Due Process Clause.  It is worth noting that in his memorandum in support of jurisdiction filed with the Ohio Supreme Court, he made the same argument, asserting that "[t]he State was able to obtain a conviction without satisfying the Constitutional standard of

establishing guilt beyond a reasonable doubt ...."  *Return of Writ*, Exhibit Nine.  That is enough to save his first ground for relief from procedural default.  *See also Hughes v. Warden, Chillicothe Correctional Inst.,* 2011 WL 1980037 (S.D. Ohio Apr. 27, 2011), *adopted and affirmed* 2011 WL 1979667 (S.D. Ohio May 20, 2011)(following the unreported Court of Appeals decision in *Nash v. Eberlin*, 358 Fed. Appx. 761 (6th Cir. 2007) and finding that a manifest weight of the evidence claim made in state court necessarily implies a challenge the constitutional sufficiency of the evidence).  The Court will therefore resolve both of petitioner's grounds for relief on their merits.

### IV.  GROUND TWO - SUGGESTIVE IDENTIFICATION

Because petitioner's second ground for relief challenges the admissibility of one of the eyewitness identifications, and because, if that identification were disallowed, it would affect what evidence the Court must consider when deciding if the jury's guilty verdict was properly supported,  the Court will address the identification issue first. Both issues, however, are subject to the deferential standard of review found in the Antiterrorism and Effective Death Penalty Act (AEDPA), explained as follows.

The provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19,

10

24 (2002) (per curiam ).  *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)(footnote omitted) .

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 261, **1 (2011), *quoting Harrington v. Richter,* 562 U.S. ----, ----, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (*quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

        In his petition and again in his traverse, petitioner attacks the admissibility of evidence that one of the victims of the robbery and hostage-taking, Keri Richardson, selected his photograph out of a photo array presented to her by police detective Michael Longworth.  The identification was made within days of the incident, and was preceded by Ms. Richardson's statement, made on the evening of the robbery, that she would be able to identify the man who held her hostage at gunpoint.  According to petitioner, Ms. Richardson based her identification on the fact that she had been able to look directly into the eyes of the robber, who was wearing a mask, and that he had grayish eyebrows and pretty eyes.  But, according to petitioner, there is no gray in his eyebrows.  Further, he argues Ms. Richardson had an opportunity to view the suspect for only eleven seconds, and that the photo array shown to her included only one person - petitioner - who matched the description of the suspect.  He also argues that it was improper for his counsel not to be present during the photo array and that a statement (called a "Viewer Witness Statement") was not read to Ms. Richardson until after she had selected his photograph from the array.  Consequently, he contends that

under the appropriate legal test, her testimony should have been excluded.

These are not quite the same arguments which were made in petitioner's appellate brief, although those arguments are included here. In that document, petitioner objected primarily to the fact that although several witnesses identified one of the robbers as either light-skinned or white (petitioner is not white), only one of the photos in the array showed a light-skinned individual. His counsel also suggested that because Detective Longworth knew that petitioner's truck was associated with the robbery, he could have suggested in some non-verbal way to Ms. Richardson which picture he wanted her to select; that his picture should not have been placed in the center position on the top row of the array; and that her identification was unreliable because none of the other witnesses was able to identify him.

The state court of appeals described the facts relating to this claim in the following way:

> Detective Longworth testified that he met with Richardson on December 15, 2008 and presented her with a photo array of six photos. He testified that he followed correct photo array procedures and had Richardson sign the photo array procedure form. Detective Longworth testified that he did not suggest to her in any way who to pick, nor did he tell her that she was required to pick anyone out of the array. Detective Longworth further testified that Richardson picked the photograph of appellant and made a signed handwritten statement attesting to the fact that she was "100 percent positive number two [was] the guy that held us in the back of the store." (Tr. 232.) On cross-examination, Detective Longworth acknowledged that appellant was the lightest skin-toned individual in the photo array and that he had discretion as to which photos were placed in the array, but that everyone in the photo array had been randomly suggested by the computer as possible matches to the suspect's descriptions. Detective Longworth testified that he presented the same

photo array to Call and Harrison, but neither of them were able to make an identification.

*State v. Poulson, supra,* at \*3.  The court of appeals then resolved petitioner's second

assignment of error by holding that

> The admission or exclusion of evidence is generally left to the discretion of the trial court. *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Unreliable identification testimony is excludable under the Due Process Clause of the United States Constitution. In the context of eyewitness identification testimony, "it is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers* (1972), 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401. The critical inquiry is "whether under the 'totality of the circumstances' the identification was reliable." *Id.* The factors to be considered in determining whether identification testimony is reliable are set out by the United States Supreme Court in *Neil.* These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. The corrupting effect of any suggestive identification procedure must then be weighed against these factors. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114-16, 97 S.Ct. 2243, 2253-54, 53 L.Ed.2d 140.

> {¶ 42} We now apply the foregoing to the facts of our case. Regarding the opportunity of the witness to view the criminal at the time of the crime, Richardson was taken by one of the robbers into the back room where they were in close proximity of each other for an extended period of time. In 2003, this court found that the three or four minutes that robbers were in a floral shop was considered an extended period of time, adequate enough for the shop owner to view and later identify the robbers. *State v. Payne,* 10th Dist. No. 02AP-723, 2003-Ohio-4891. Here, the robbers were in the store and in the back room for at least that amount of time since one of the Donatos employees had time to escape out the back door to call 911 from a nearby home and walk back to the store to see the two men leaving the store.

> {¶ 43} Regarding the witness's degree of attention, Richardson testified that she got a good look at the robber, who took her at gunpoint to the

back of the room. She testified that she looked directly into the robber's eyes and was able to see areas of his face and skin tone despite the mask he wore.

{¶ 44} With respect to the accuracy of her prior description of the criminal, Richardson testified that she spoke to Detective Longworth right after the incident and told him that the robber in the back room was light-skinned and that she would be able to recognize him by his eyes. Appellant, a black male, is of lighter skin than the second robber.

{¶ 45} As for the level of certainty demonstrated at the confrontation, Richardson testified that, when presented with the photo array, she immediately recognized appellant in the photo array with 100 percent certainty and made a signed handwritten statement to that effect.

{¶ 46} Regarding the time between the crime and the confrontation, immediately after the crime, Richardson made a statement to police as to appellant's appearance and that she would be able to recognize him. Five days later, on December 15, 2008, Richardson identified appellant in the photo array. In *State v. Horton*, 10th Dist. No. 06AP-311, 2007-Ohio-4309, this court did not find a photo array identification made almost two months after the crime to be unreliable. Thus, in our case, five days is more than adequate.

{¶ 47} Finally, the corrupting effect of any suggestive identification procedure must then be weighed against these factors. We find that the identification procedure in this case was not suggestive. The photo array was computer-generated, where the six photos were randomly suggested as possible matches to the suspect's descriptions. Although Detective Longworth acknowledged that appellant was the lightest skin-toned individual in the array, the other five photographs were all reasonably close in appearance to appellant's photograph. The photo of appellant did not stand out from all of the photos so as to be unnecessarily suggestive. Additionally, Detective Longworth followed correct photo array procedures. The photos were arranged in no particular order of importance, and it was never suggested to Richardson that she was required to pick someone from the photo array. Further, Richardson filled out the procedure forms and signed a handwritten statement identifying appellant's photo.

{¶ 48} Because neither the photo array itself, nor the procedure used by

15

the police detective were impermissibly suggestive and because, under the totality of the circumstances, Richardson's identification testimony was reliable, we find that the trial court did not abuse its discretion and commit prejudicial error by admitting the evidence of the photo array identification. Appellant's second assignment of error is overruled.

*State v. Poulson, supra,* at *8-10.

This Court has previously explained the legal standard under which claims of

suggestive identification procedures are evaluated:

Identification testimony based upon a pre-trial procedure that is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates a criminal defendant's right to due process. *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir.1986), quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The Court first must determine whether the pre-trial identification procedure employed was unduly suggestive. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-1071 (6th Cir.1994). If so, the Court must then consider the totality of the circumstances in order to determine if the identification is nevertheless reliable. *Id*., at 1070, citing *United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992); *Neil v. Biggers, supra*, 409 U.S. at 199-200; *Thigpen v. Cory, supra*, 804 F.2d at 895. In making this determination, the Court must consider the following five factors:

(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

*Ledbetter v. Edwards, supra*, 35 F.3d at 1070, citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers, supra*, 409 U.S. at 199-200.

16

*Payne v. Bobby*, 2006 WL 508784, *13-14 (S.D. Ohio Feb. 27, 2006), *adopted and affirmed* 2006 WL 2583380 (S.D. Ohio Sept. 6, 2006); *see also Mills v. Cason*, 572 F.3d 246 (6th Cir. 2009). Clearly, the state court of appeals followed this same method of analysis and cited to many of the same cases. The only way that petitioner can obtain relief on this claim is to persuade this Court that the state appellate court's application of the correct legal standard was objectively unreasonable based on the facts of this particular case.

Addressing the first step of the required two-step inquiry, petitioner contends that the photo array procedure used by Detective Longworth was impermissibly suggestive. He bases that argument on the fact that the photo array included only one light-skinned individual (himself), that his picture appeared in the middle of the top row, that Ms. Richardson was not read the Viewer Witness Statement before she picked out his photo, and that because Detective Longworth knew which picture depicted a suspect, he may have subconsciously provided cues to Ms. Richardson as to which picture to select.

The state court of appeals found, however, that the identification procedure was not suggestive. That finding was based on the evidence in the record that the array was computer-generated and that the other photographs were reasonably close in appearance to petitioner's, although he was the lightest-skinned individual in the array. The court of appeals also found, as a fact, that petitioner's photograph did not stand out from the others and that correct procedures were followed. To the extent that these

17

represent factual findings made by the state court, this Court is bound to accept them unless those findings are "unreasonable ... in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).  Given the fact that the record contains absolutely no evidence of any improper or suggestive conduct on the part of Detective Longworth, either in his or Ms. Richardson's testimony, that part of the state court's factual finding cannot be disturbed here.

It is true, as petitioner argues, that the photo array was not completely computer-generated as suggested by the state court.  Detective Longworth testified that although the computer provided him with a number of photographs based on information about the suspect, he made the final selection of the other five pictures.  He also acknowledged that the other people whose photos were selected were "quite a bit darker" than petitioner, and that all of them were African-American notwithstanding at least one of the witness' statements that one of the two robbers might have been white. There is no dispute that petitioner's picture was in the center of the top row.  The actual photo array is an exhibit before this Court, and petitioner is clearly the lightest-skinned person in the array, although there is a good deal of similarity among the photos with respect to other facial characteristics.   But none of these factors, even if there is some minor difference between the evidence in the record and the state court's recitation of the facts, indicate that the procedure of assembling and displaying the photo array was unduly suggestive, or that the state court's finding on this issue was unreasonable.  The record also shows that Ms. Richardson was shown another photo array first and that

18

she did not select anyone's photo from that array as having been involved in the robbery, so that she was not simply given one array and told to pick out the suspect.

This is simply not a case where the evidence, even as petitioner interprets it, leads inescapably to the conclusion that the identification procedure followed by Detective Richardson was unduly suggestive.  It did not, for example, involve a "police attempt to emphasize the photograph of a given suspect," *see United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003), nor is it a case where "the police informed [Ms. Richardson] prior to her identification of the appellant that they had a suspect."  *See Grubbs v. Hannigan*, 982 f.2d 1483, 1490 (10th Cir. 1993).  As the *Grubbs* court also noted, "a photo-lineup is not necessarily suggestive merely because the individuals in the lineup differ in facial characteristics" unless the differences are "strikingly apparent" or relate to some "important component" of the witness's description of the subject, such as hair style.  *Id.*  So long as the array itself does not emphasize the suspect's photo over any of the others, it is not unduly suggestive merely because there are differences - even fairly significant ones - between the suspect's photos and the others.  *See, e.g, McGowan v. Miller*, 109 F.3d 1168 (7th Cir. 1997)(upholding state court's determination that a photo array was not unduly suggestive even though four of the six photos were of men much younger than the defendant).  Given the state of federal law on this subject, the state court did not unreasonably determine that the photo array was not unduly suggestive.  That being so, it is not strictly necessary to engage in the second step of the analysis, which focuses on factors which may allow even a suggestive identification process to be

presented to the jury if the totality of the circumstances show that the identification was reliable.

Even if the state court erred in finding that the photo array was not unduly suggestive, it reasonably applied the five-factor test from *Neil v. Biggers* in determining that Ms. Richardson's identification of petitioner was admissible. That court resolved each of the five factors in favor of admissibility. It found - and there is support in the record for this finding despite petitioner's argument to the contrary - that Ms. Richardson had two or three minutes to observe the suspect. She so testified, and the timeline provided by Mr. Harrison, who had gone to the neighbors and called the police (and whose estimate of how much time it took him to do so is relied on by petitioner in making his "eleven seconds" argument) does not directly contradict her testimony. Ms Richardson did testify, as the court of appeals stated, that she had a very good opportunity to observe that portion of the suspect's face which was visible above his mask and below his hood, and she immediately told the police she could identify him. She did so five days later, expressing one hundred percent certainty about that identification. These are all facts supported by the record, and none of them undercut the reliability of her identification.

To be sure, there are other facts as well which are pertinent to the credibility of her testimony. It is fairly well-accepted that eyewitness testimony can be mistaken. There are minor discrepancies between her description of the suspect and his actual appearance, although she did not really say that he had bushy gray eyebrows; rather,

20

she testified that she told Detective Longworth that the suspect's "eyebrows had like a grayish color in it. I know it was darker, yes." (Trial Transcript, at 85). There are the issues described above about the photo array. And there is the fact that none of the other witnesses were able to identify petitioner and that he presented alibi testimony. But all of those factors do not mandate a finding that her identification of petitioner was so unreliable as to be inadmissible. Once the court makes an initial finding of admissibility, as the trial court did here - and, in this Court's view, did so in a "not unreasonable" fashion - the weight to give such testimony becomes an issue for the jury. *See, e.g., United States v. Ford*, 72 Fed. Appx. 342, *5 (6th Cir. August 1, 2003)(such arguments go "to the weight of the evidence, not its admissibility"). The Court therefore finds petitioner second ground for relief to be without merit.

## V. GROUND ONE - SUFFICIENCY OF THE EVIDENCE

Petitioner's other argument is that the evidence was constitutionally insufficient to support the jury's verdict. As discussed above, the state court of appeals did not directly address this issue, but confined itself to the question of whether the conviction was against the manifest weight of the evidence. However, a conviction cannot be upheld under that standard unless there was also constitutionally sufficient evidence to support the conviction. *See Nash v. Eberlin*, 358 Fed. Appx. 761 (6th Cir. 2007). The Court therefore reviews this claim under the AEDPA standard.

A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard. As this Court

21

explained in *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011):

> In *Jackson  v. Virginia* [443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.
>
> It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").
>
> *Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer,* 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more detail:
>
>> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's

verdict, as contemplated by Jackson; second, deference
should be given to the Michigan Court of Appeals'
consideration of the trier-of-fact's verdict, as dictated by the
AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007); *Nash v.
Eberlin*, 258 F. App'x 761, 765 (6th Cir.2007). This Court recognizes,
however, that "even after AEDPA, [the Court] must 'distinguish
reasonable speculation from sufficient evidence' when reviewing a state
court's application of *Jackson*." *Smith v. Romanowski*, No. 07–1578, 2009 WL
1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v.
Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

Much of petitioner's argument about the sufficiency of the evidence relates to

Ms. Richardson's identification of him as one of the two robbers. Because the Court has

determined that the jury was properly permitted to hear her testimony, the Court's

analysis of the sufficiency of the evidence includes the fact that there was an eyewitness

who placed petitioner at the scene with a firearm in his hand. Petitioner also makes

much of the fact that no other witnesses were able to identify him and that he provided

the police with a statement explaining his whereabouts on the night in question which

was subsequently corroborated by an alibi witness. He also argues that police

fabricated certain testimony, particularly the statement that, initially, he denied

knowing how glass from the truck window ended up in his pocket. He claims to have

picked up the glass the following day, and his mother testified in support of that claim.

Petitioner's arguments incorrectly focus on evidence of his innocence. The

question before the Court when reviewing a jury verdict for sufficiency of the evidence

is not on whether the defendant presented evidence which, if believed, would have

supported a not guilty verdict, or even whether the defendant's evidence was stronger than the prosecution's.  Those are determinations left to the jury.   The Court's focus must be on the evidence which would support a finding of guilt; the Court may not "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court" because the "assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claim." *Matthews v. Abramajtys*, 319 F.3d at 788.  As this Court has said, "[a] sufficiency of evidence review, for purposes of federal habeas relief, does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather on whether it made a rational decision to convict or acquit." *Benge v. Johnson*, 312 F.Supp.2d 978, 1000 (S.D. Ohio 2004).

Looking at the evidence in the light most favorable to the prosecution, a rational jury could have reached these conclusions.  First, petitioner's truck was used in the robbery.  Second, one of the two robbers observed by all of the victims, and by the police officers who stopped the truck, generally matched petitioner's physical description, including the fact that one robber was a lighter-skinned African-American male.  Third, DNA taken from the ski mask found in petitioner's truck belonged to a long-time friend of petitioner's, Anthony Williams.  Fourth, Keri Richardson identified petitioner as the man who held her at gunpoint.  Fifth, broken glass - apparently from the truck window broken out by the police officers - was found in petitioner's pocket. The existence of an alternate explanation for some of these facts does not mean that the

24

jury was not entitled to reject that explanation and draw the inference that petitioner was guilty.  In fact, it is likely that even without the other corroborating evidence which was present in this case, Ms. Richardson's identification of petitioner would have been enough evidence for the jury to convict.  As another court has said, "[t]he fact that no physical evidence linked [the defendant] to the scene is not dispositive of whether [he] was at the scene."  *See Hilliard v. Hudson*, 599 F.Supp.2d 921, 932 (N.D. Ohio 2009) (rejecting a claim that the evidence was insufficient to support a conviction because, while physical evidence was lacking, eyewitness testimony placed the defendant at the scene of the crime); *see also Hawkins v. Coyle*, 2004 WL 5708285, *59 (S.D. Ohio March 22, 2004), *adopted and affirmed* 2005 WL 1684022 (S.D. Ohio July 19, 2005), *aff'd in part and rev'd in part* 547 F.3d 540 (6th Cir. 2008)("even the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction ..."), *citing Brown v. Davis*, 752 F.2d 1142 (6th Cir. 1985).

*Brown v. Davis* is particularly instructive.  There, as the Court of Appeals noted, the defendant had been convicted of rape almost exclusively on the testimony of one eyewitness, whose credibility was substantially undercut by the fact that she knew the person she eventually named as her attacker but she did not provide his name to police when first questioned and that she had given another name to police before ultimately identifying the defendant as her assailant.  Also, as the Court noted, "it may seem foolhardy and irrational for an undisguised man who is well known by the victim to attack her in a lighted room ...."  *Id*. at 1147.  The Court also noted the studies showing

that eyewitness identifications can be unreliable and stated that it was "painfully aware of miscarriages of justice caused by wrongful identification." *Id*. at 1146. Nevertheless, because the only question before the Court was the constitutional sufficiency of the evidence, and because the jury could rationally have believed the victim's testimony, the Court denied relief, stating that "[t]he defense had every opportunity to cross-examine and impeach the victim's credibility. The issue of credibility, the demeanor of the parties, and the weighing of the evidence were properly for the jury." *Id*. at 1147. Because that question - and not "whether [the reviewing court] believes the evidence at the state trial established guilt beyond a reasonable doubt" - is the crux of the sufficiency of the evidence inquiry, the petitioner's claim was foreclosed. *Id*.

The same is true here. A rational jury could have believed the direct and circumstantial evidence presented at trial and, from that evidence, could have found petitioner guilty beyond a reasonable doubt. That is what the jury did, and this Court cannot second-guess that decision because there was enough evidence to support it. Petitioner's second claim is therefore without merit.

## VI.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DISMISSED**.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to

26

those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge

27