IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LOWELL P. POULSON**,                       **CASE NO. 2:11-cv-1067**

           **Petitioner,**                **JUDGE ALGENON L. MARBLEY**

v.                                           **Magistrate Judge Kemp**

**WARDEN, ROSS CORRECTIONAL
INSTITUTION**.

          **Respondent.**

## OPINION AND ORDER

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. On September 25, 2012, the Magistrate Judge recommended that the case be dismissed on its merits. Petitioner has filed an objection to that recommendation. For the following reasons, the objection will be **OVERRULED** and this case will be **DISMISSED.**

### I. STANDARD OF REVIEW

When objections are received to a Magistrate Judge's Report and Recommendation on a dispositive matter, the assigned District Judge "shall make a de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made ...." Fed. R. Civ. P. 72(b). After review, the District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.; see also* 28 U.S.C. §636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991).

## II.  BRIEF BACKGROUND OF THE CASE

Petitioner was charged with and convicted of robbing a Donato's Pizza restaurant on Noe-Bixby Road on the east side of Columbus on December 10, 2008.  According to the various witnesses, including several employees of the restaurant who were herded into a back room at gunpoint and kept there while the robbery took place, there were two robbers, both wearing masks, and identifying them was therefore difficult.  As more fully discussed below, however, one of these witnesses, Keri Richardson, said she could identify the man who held her at gunpoint by his eyes, and she picked petitioner's photograph out of photo array within days of the robbery and identified him in court.  There was circumstantial evidence suggesting petitioner's involvement in the robbery, including the undisputed fact that his truck was the getaway vehicle (it was stopped by police shortly after the robbery but neither of its occupants was apprehended at that time) and the fact that DNA matching a long-time acquaintance of petitioner's was found on a ski mask in the truck.  On the other hand, petitioner presented a number of alibi witnesses and strongly contested Ms. Richardson's identification of him as one of the robbers.  The jury ultimately resolved these issues in favor of the state and found petitioner guilty.  He received an aggregate sentence of fourteen years in prison due to convictions on a related weapons charge and on a firearm specification.

Petitioner challenged his conviction on appeal, contending both that the evidence was insufficient to convict him and that Ms. Richardson's identification of him was unreliable and should have been suppressed, and he raises those same two issues in this Court.  The state court of appeals' discussion of and disposition of these issues is set forth both in that court's opinion,

2

*see State v. Poulson*, 2010 WL 3011081 (Franklin Co. App. Aug. 3, 2010), and in the Report and Recommendation (Doc. 17), and the Court will not repeat it in detail in this Opinion and Order except as necessary to explain why the Report and Recommendation concluded (as it did) that the state court's determination of these issues was not contrary to, or an unreasonable application of, federal law - the standard of review prescribed in 28 U.S.C. §2254(d), which prohibits a federal court from overturning a state conviction unless the state court's adjudication of a federal constitutional issue "(1) resulted in a decision that was contrary to, or involved an unreasonable application of , clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See also Williams v. Taylor*, 529 U.S. 362 (2000).

### III.  THE REPORT AND RECOMMENDATION

The Report and Recommendation first concluded that, contrary to Respondent's argument, the claim attacking the constitutional sufficiency of the evidence was not procedurally defaulted because it was presented to the state courts not just as a claim that the conviction was against the manifest weight of the evidence, but a claim based on the Due Process Clause of the Fourteenth Amendment.  Respondent has not objected to that determination, and it appears to be correct, so this Court will also reach the merits of both of petitioner's claims.

The Report and Recommendation also noted that the analysis of the sufficiency of the evidence differs depending upon whether Ms. Richardson should have been permitted to identify petitioner as one of the robbers.  Therefore, it addressed that claim first.  This Court will do likewise.

3

### A. Eyewitness Identification

The state court of appeals concluded that under applicable federal precedent, particularly *Neil v. Biggers*, 409 U.S. 188 (1972) and *Manson v. Brathwaite*, 432 U.S. 98 (1977), the trial judge did not abuse his discretion by admitting Ms. Richardson's identification testimony. That court held that the proper procedure to follow on review of this type of claim is to weigh the testimony against the five indicia of reliability set forth in *Neil v. Biggers,* and then to consider against these factors "[t]he corrupting effect of any suggestive identification procedure ...." *State v. Poulson*, 2010 WL 3011081, *8 (Franklin Co. App. Aug. 3, 2010). In a detailed analysis quoted in the Report and Recommendation, the court of appeals concluded, first, that each of the five *Neil* factors - "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation," *see id.*, weighed in favor of admitting the testimony. Next, the court of appeals reviewed the identification procedure - a photo array - and concluded that it was not suggestive, and that proper procedures had been followed by Detective Longworth when he assembled the array and showed it to Ms. Richardson. Consequently, applying what it described as a "totality of the circumstances" approach, the state court held that no error was committed when the trial court permitted Ms. Richardson to testify that petitioner was the man who held her at gunpoint during the robbery. *Id*. at 10.

There is no question that the state court identified the key cases from the United States Supreme Court which deal with the issue of when the admission of an unduly suggestive or unreliable identification by an eyewitness violates the Due Process Clause. *See, e.g., Howard v.*

4

*Bouchard,* 405 F.3d 459, 481 (6th Cir. 2005).  Consequently, the question for this Court is whether the state court's application of the principles set forth in those cases was unreasonable given the set of facts with which the state court was presented.  Before turning to that question, however, the Court will address an issue which petitioner raises in his objections concerning the applicability of *United States v. Wade,* 388 U.S. 218 (1967) to this case.

*United States v. Wade* dealt with a post-indictment lineup - that is, a line-up which occurred only after the defendant had been indicted and after counsel had been appointed to represent him.  Counsel was not notified that the lineup would be conducted.  Defendant, who was accused of robbing a bank, was picked out of the lineup by two bank employees, and they identified him at trial.  The Supreme Court held that they should not have been allowed to do so because such a lineup is a "critical stage" of the proceedings and the defendant was unduly prejudiced by the absence of his counsel at the lineup.

Undoubtedly, the issues relating to suggestive identification procedures are not confined to line-ups, and a witness can be misled into making an incorrect identification during other types of identification procedures, including photo arrays.  However, *Wade,* which is primarily a Sixth Amendment case, has never been applied to photo arrays, and particularly not to those which occur prior to the time that a suspect is charged and the right to counsel attaches.  *See, e.g., United States v. Jackson*, 304 Fed. Appx. 424, 430 n.1 (6th Cir. December 23, 2008) ("the defendant's claim that identification evidence should have been suppressed under *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), is without merit because he was identified in a photo array and not in a corporeal line-up").  Thus, the fact that neither petitioner nor his counsel was present when the photo array was shown to Ms. Richardson is not an

independent constitutional violation, nor did the state court err in any way by failing to apply *Wade* to petitioner's claims on appeal.

Before addressing petitioner's claim directly, the Court notes that, under controlling Sixth Circuit precedent, the analysis of a claim of improper identification procedures follows a definite order of decision-making. "The court first considers whether the [identification] procedure was unduly suggestive." *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). If not, the inquiry is at an end. However, "[i]f the court does find that the procedure was unduly suggestive, it next evaluates the totality of the circumstances to determine whether the identification was nevertheless reliable." *Id*. at 1071. The five indicia of reliability identified in *Neil v. Biggers* come into play only at that step. *Id*. Here, the state court reversed the order of decision-making, analyzing the *Neil* factors first and then determining that the photo array procedure was not unduly suggestive. *State v. Poulson,* 2010 WL 3011081, at *8-9. This order of analysis actually favors the defendant, so even though it does not strictly conform with the procedure which this Court would follow in reviewing such a claim, it cannot be characterized as an unreasonable application of federal law.

Taking the issues in the order prescribed by *Ledbetter*, the state court found that the photo array procedure was not unduly suggestive. It focused on these factors: (1) that the array shown to Ms. Richardson was "computer-generated"; (2) that "the other five photographs were all reasonably close in appearance to appellant's photograph"; (3) that "[t]he photo of appellant did not stand out from all of the photos"; (4) that "Detective Longworth followed correct photo array procedures"; (5) that "[t]he photos were arranged in no particular order of importance"; and (6) that "it was never suggested to Richardson that she was required to pick someone from

6

the photo array." *State v. Poulson, supra*, at *9.

Petitioner argues that each of these findings is incorrect, and unreasonably so in light of the uncontroverted evidence presented at trial. He points out that, as to the first of the state court's findings, although the computer suggested the photos to be used, Detective Longworth selected the five other photographs himself from a larger group generated by the computer, and he did not include any Caucasian or Hispanic subjects even though several of the witnesses suggested that the lighter-skinned of the two robbers might not have been African-American. As to the second finding, he contends that it is apparent from the array itself that he was the only light-skinned subject, making him stand out from the rest. As to the third finding, he claims that his picture, which was placed in the center of the top row, stood out like a beacon. As to the fourth finding, he notes that the prescribed procedure for photo arrays required that a written explanation be given to and signed by the witness before the array is shown, but that in this case Detective Longworth did not present that information to Ms. Richardson until after she had viewed the array and selected his photograph. On the fifth point, he again notes the placement of his picture in the center of the top row. Finally, on the sixth point, he argues that all of these other flaws in the process lead inescapably to the conclusion that Ms. Richardson was encouraged, and practically required, to pick him out of the array.

The facts in this case are more or less as petitioner claims them to be, with a few exceptions. First, this Court does not view the photo array itself as clearly suggesting a suspect; there is a good deal of resemblance between petitioner's photo and the other five, although one's eyes might be drawn to his picture first because of its placement and because there is light reflected from his forehead in a way which is somewhat different from the other photos. It is

7

true that Detective Longworth did choose not to include any non-African-Americans in the array. It is not as clear as petitioner claims that proper procedure was not followed; Detective Longworth testified that he read the photo array form to Ms. Richardson before she looked at the pictures and explained to her that they were not placed in any particular order and that she was to look at all six. (Trial Transcript, at. 6). She testified that she was asked to look at the photos and to tell him if she recognized anyone, and that although he "didn't go over a statement," he "showed me a paper." (Tr. 79). She also affirmed that he did not tell her that the suspect was in the array. (Tr. 82). One additional fact, which may have some significance, is that she was shown another photo array before this one and did not select anyone's picture from that array.

After considering petitioner's arguments, which would be good arguments to have made to the jury concerning the weight to be given to Ms. Richardson's claimed identification of him, the Court cannot say that the state court unreasonably determined the issue of suggestiveness. The law does not regard every difference in the pictures of a suspect and others in the array as suggestive. As one court has noted, "[t]he due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." *United States v. Bubar*, 567 F.2d 192, 199 (2d Cir. 1977). If the skin tone difference was dramatic, the array could be suggestive, *see, e.g., Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986), but it does not appear to this Court that the differences in the photos in this array are so dramatic as to suggest that only petitioner could have been the suspect. As Detective Longworth testified, and this testimony is borne out by the array, although the complexions of some of the persons whose pictures were selected were darker than petitioner's, there were "a couple that are

8

pretty close" and petitioner's complexion was only "a slight shade lighter." (Tr. at 12). Courts have also held that the placement of a suspect's picture in the top center position does not support a claim of improperly suggestive procedures. *See United States v. Burdeau*, 168 F.3d 352 (9th Cir. 1999). There is also nothing in this record to support the claim that because of a minor discrepancy between Detective Longworth's testimony and Ms. Richardson's concerning what, exactly, he told her, the state courts should have found the procedure tainted. Neither of those witnesses' testimony suggests in any way that she was told something which made her focus on petitioner's photograph, and she specifically testified to the absence of any such coaching. As this Court has stated, "photo arrays generally become unnecessarily suggestive only when the officer conducting the array directs the witness to pick one specific photograph or otherwise indicates which photograph is the suspect ...." *United States v. Mathis*, 2008 WL 1990443, *7 (S.D. Ohio May 2, 2008). There is no evidence of that type of conduct here.

Even if the state court was wrong, and unreasonably so, on the issue of whether the photo array procedure was unduly suggestive, this Court could not grant relief unless the *Neil v. Biggers* factors also point in the direction of an unreliable identification. The state court found that all five factors favored admissibility of Ms. Richardson's testimony; again, petitioner argues that each of these separate determinations was unreasonable in light of the facts of record.

The state court found that Ms. Richardson's testimony was reliable because: (1) she had a good opportunity (three to four minutes or more) to observe petitioner's face (or what there was visible of it under the ski mask); (2) she paid close attention to the features she could see; (3) she provided an accurate description of those features to Detective Longworth immediately after the robbery; (4) she expressed 100% certainty about her identification; and (5) she picked

9

his photo out of the array within five days of the robbery. *State v. Poulson, supra*, at *8-9. Petitioner argues that these findings do not comport with the record because: (1) Ms. Richardson only had a matter of seconds within which to observe the robber; (2) her identification was limited to the eyes and eyebrows of the suspect, and she misidentified the eyebrows, stating that they had some gray in them (petitioner's do not); (3) her description of petitioner was not accurate, for the same reason, and no one else was able to identify him; (4) her "100% certain" identification at the photo array was tainted by the suggestiveness of the procedures; and (5) at the time she viewed the array, petitioner was not represented by counsel and counsel was not present.

      Here, the record is not nearly as clear as petitioner would have it. The witness who estimated that only a matter of seconds elapsed between the time the robbers entered the store and when they left was not in the back room. Ms. Richardson, who was, said that she was there with the robber for "[a]bout a minute or two." (Tr. 78). Her identification included skin tone, which matched petitioner, and eye color and characteristics, as well as the statement petitioner focuses on about the robber having had darker eyebrows with either a little bit of gray in them, or of a grayish color. She gave the same description consistently, both immediately after the incident and at other times. This Court has already concluded that there was little, if any, suggestiveness about the photo array procedure. And finally, petitioner was not entitled to have counsel present when the array was shown. Consequently, there is not much persuasive force to his arguments on these factors. And even if this Court might disagree with the state court on one or two of them, that does not mean that its balancing of these factors against a relatively non-suggestive photo array procedure led to an unreasonable result.

10

It is important to remember that, when a federal court reviews a claim like this in the context of a habeas corpus action, it may not substitute its views for that of the jury in terms of whether to credit eyewitness testimony, nor may it grant relief on a claim just because it disagrees with the state courts about the law.  Even in a case where a federal court may entertain substantial doubt about the state court's decision on some of the *Neil v. Biggers* factors, and where the pre-trial identification proceeding was suggestive, the "AEDPA requires us to afford wide latitude for the state court's determinations on the merits."  *Grayer v. McKee*, 149 Fed. Appx. 438, 448 (6th Cir. September 9, 2005).   Factual determinations such as those made by the state court in this case cannot be overturned without clear and convincing evidence of their inaccuracy.  28 U.S.C. §2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).  Petitioner has presented cogent arguments, but there are good arguments to be made as well in support of the state court's determination of this claim.  When that is the case, this Court is powerless to grant relief.

### B.  Sufficiency of the Evidence

The Report and Recommendation began its analysis of this claim by stating, in a way not challenged by petitioner:

> A challenge to the sufficiency of the evidence, when made in a habeas corpus petition subject to the AEDPA, must meet an exacting standard.  As this Court explained in *Lynch v. Hudson*, 2011 WL 4537890, *81-82 (S.D. Ohio September 28, 2011):
>
>> In *Jackson  v. Virginia* [443 U.S. 307 (1979)], the United States Supreme Court held that as a matter of fundamental due process, a criminal conviction cannot stand unless each essential element is proven beyond a reasonable doubt. 443 U.S. at 316. The Supreme Court explained that when reviewing a challenge to the constitutional sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the

11

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The Supreme Court cautioned, with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Thus, after reviewing the evidence in a light most favorable to the prosecution and respecting the trier of fact's role in determining witnesses' credibility and weighing the evidence, a federal court must grant habeas corpus relief "if it is found that upon the record evidence at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.

It is important to remember when reviewing a sufficiency of the evidence challenge that this Court "do[es] not reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). If the record contains credible, competent evidence enabling a rational jury to find each essential element beyond a reasonable doubt, then Petitioner's challenge to the sufficiency of the evidence fails. *Cf. Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir.2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

*Further, as the Sixth Circuit has explained, "[i]n a habeas proceeding, however, we cannot simply conduct de novo review of the state court's application of [the *Jackson v. Virginia*] rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of the AEDPA." *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir.2008). In *Tucker v. Palmer,* 541 F.3d 652 (6th Cir.2008), the Sixth Circuit explained in more detail:

> Accordingly, the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by the AEDPA.

*Id*. at 656. *See also Parker v. Renico*, 506 F.3d 444, 448 (6th Cir.2007); *Nash v. Eberlin,* 258 F. App'x 761, 765 (6th Cir.2007). This Court recognizes, however, that "even after AEDPA, [the Court] must 'distinguish reasonable speculation from sufficient

>evidence' when reviewing a state court's application of *Jackson*." *Smith v. Romanowski*, No. 07–1578, 2009 WL 1884451, at *6 (6th Cir. Jul.1, 2009) (Moore, J., dissenting) (quoting *Brown v. Palmer*, 441 F.3d 367, 352 (6th Cir.2006)).

*Report and Recommendation,* at 21-23.

This Court agrees, primarily for the reasons set forth in the Report and Recommendation, that the state court's determination of the sufficiency of the evidence cannot be successfully challenged here, especially given the fact that Ms. Richardson's eyewitness identification of petitioner was properly before the jury. Although petitioner, in his objections, asserts that "the Prosecution presented not one single piece of evidence that, beyond a reasonable doubt, establishes that the Petitioner participated in a robbery of a Donato's restaurant," *Objections*, at 17, as the Report and Recommendation correctly points out, the uncorroborated identification of suspect by a victim of a crime is enough evidence on which to base a conviction. *Hawkins v. Coyle*, 2004 WL 5708285, *59 (S.D. Ohio March 22, 2004), *adopted and affirmed* 2005 WL 1684022 (S.D. Ohio July 19, 2005), *aff'd in part and rev'd in part* 547 F.3d 540 (6th Cir. 2008). There was also other circumstantial evidence, including the use of petitioner's truck in the robbery and the presence of broken glass (the window of his truck was broken by police officers during the post-robbery stop of that vehicle) in his pocket. He has offered alternative explanations for these facts and he called alibi witnesses at trial, but the jury chose not to credit his explanations. His argument that the same person who took his truck "very well could have been responsible for the robbery" and that Ms. Richardson's statement that the light-skinned robber reminded her of someone in the restaurant earlier that day (who turned out to be a gentleman named Rogers) demonstrate that his attack, in legal terms, is not on the sufficiency of the evidence that he was the perpetrator, but on the jury's or the investigating officers' failure to

13

adopt a different plausible theory of who committed the crime.  Again, given how difficult it is to overturn a conviction on this ground when raised as part of a habeas petition, the Court cannot base a favorable decision on these types of arguments.  It must be abundantly clear, for petitioner to prevail on his sufficiency of the evidence claim, that no rational juror could have believed the eyewitness testimony nor reasonably inferred from the circumstantial evidence that petitioner was the lighter-skinned robber, and that the state court's contrary conclusion is itself unreasonable.  That does not describe the record here.

## IV.  DECISION

Based on the reasons stated by the Court in its Opinion and Order, the Court **ADOPTS** the recommendation of the Magistrate Judge and **OVERRULES** petitioner's objections.  The petition for a writ of habeas corpus is **DENIED** and this case is **DISMISSED**.

**IT IS SO ORDERED.**

DATED: June 24, 2013                               s/Algenon L. Marbley
                                                                Algenon L. Marbley
                                                                United States District Judge